UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KENNETH L. SKAGGS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:09 CV 346 |
|  | ) |  |
| JARROD JONES, JANE STOOPS, | ) |  |
| DR. RICHARD HIRSCHLER, | ) |  |
| and KOSCIUSKO COUNTY | ) |  |
| SHERIFF WILLIAM "ROCKY" | ) |  |
| GOSHERT, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Defendant Dr. Richard Hirschler has moved for summary judgement on plaintiff Kenneth Skaggs's complaint. (DE # 59.) For the following reasons, that motion is denied.[1]

**I. Facts**

The following facts are not genuinely disputed.[2] On July 22, 2008, plaintiff entered the Kosciusko County Jail ("the jail"), in Kosciusko County, IN, to serve a three-day sentence. Upon entering the jail, defendant Dr. Richard Hirschler ("Dr. Hirschler") became plaintiff's primary care physician.

---

[1] Plaintiff has moved to file a sur-response brief. (DE # 78.) That motion is granted, and the court will consider that brief and defendant's response to that brief (DE # 81).

[2] The facts that follow are construed most favorably to plaintiff, the non-moving party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998)

At the time he was booked on July 22, plaintiff was taking the following medications: 1 mg of Xanax twice a day,[3] and 10 mgs of Paxil once a day, and 25 mgs of Elavil twice a day. (DE # 60 at 3; DE # 61-3 at 9). On July 22, 2008, plaintiff's wife brought plaintiff's current medications, including Xanax, to the jail. At some point during that day, someone from the jail called defendant and informed him of the medications plaintiff was taking, including Xanax. At that point, defendant prescribed plaintiff 10 mgs of Paxil once a day for ninety days and 25 mgs of Elavil for ninety days. These were the doses plaintiff had been taking prior to his arrival at the jail. Defendant, however, decided to discontinue plaintiff's prescription for Xanax.[4] Additionally, defendant chose not to wean plaintiff off of Xanax, or prescribe some other medication that would reduce the risk of seizure. Instead, defendant chose to monitor plaintiff for any symptoms of withdrawal.

Over the next two days, plaintiff was given the medication defendant prescribed for him, and the jail's nursing staff monitored his condition. Plaintiff reported no problems until July 24, 2008, when plaintiff suffered a seizure and had to be taken to

---

[3] The parties dispute whether defendant was told that plaintiff was taking Xanax on an "as needed" basis. This issue will be discussed later in the opinion.

[4] In their briefs, the parties go into detail regarding defendant's reasoning for discontinuing the Xanax. But, as discussed below, because there is a factual question regarding whether defendant was deliberately indifferent by not weaning plaintiff off of Xanax or prescribing some other medication to reduce the risk of seizure, the court need not address defendant's reasoning for stopping the Xanax.

Kosciusko Community Hospital. The medical staff at the hospital diagnosed the seizure as being caused by benzodiazepine[5] withdrawal.

Plaintiff brought suit against several defendants, including Dr. Hirschler, alleging that defendant's failure to wean plaintiff off of Xanax or to prescribe some other medication that would prevent seizures constituted cruel and unusual punishment under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that these failures amounted to an act of deliberate indifference to plaintiff's serious medical needs. (DE # 78-1 at 1.) Defendant has now moved for summary judgment on plaintiff's claim. (DE # 59.)

**II. Legal Standard**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

---

[5] Xanax is a benzodiazepine. (DE # 78-1 at 1; DE # 72-3 at 1.)

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only

4

those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

**III. Analysis**

Defendant has moved for summary judgment on plaintiff's deliberate indifference claim. As outlined below, however, a question of material fact remains that prevents the entry of summary judgment in defendant's favor.

The Eighth Amendment prevents the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. "The Eighth Amendment's prohibition against cruel and unusual punishment, which embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency,' prohibits punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 102 (1976)). "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Id.* (quoting *Estelle*, 429 U.S. at 103).

Prison officials violate the Eighth Amendment if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Thus, for a plaintiff to succeed on a claim for deficient medical care, the plaintiff has the burden of proving two elements: "1) an objectively serious medical

condition; and 2) an official's deliberate indifference to that condition." *Id.*; *see also Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003).

"A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005)). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

In this case, defendant does not argue that plaintiff did not suffer from an objectively serious medical condition. Therefore, the court will confine its analysis to the second prong of the deficient medical care analysis: deliberate indifference.

"Deliberate indifference is a subjective standard." *Arnett*, 658 F.3d at 751. Under this standard:

> [C]onduct is "deliberately indifferent" when the official has acted in an intentional or criminally reckless manner, *i.e.,* "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'"

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Armstrong v. Squadrito,* 152 F.3d 564, 577 (7th Cir. 1998)). "Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually

6

intended harm to befall him from the failure to provide adequate care." *Roe*, 631 F.3d at 857.

"[I]n the context of medical professionals, it is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). "'A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Arnett*, 658 F.3d at 751 (quoting *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008)). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Id.* (quoting *Roe*, 631 F.3d at 857).

In the case at hand, defendant concedes that he knew about the risk of seizure when discontinuing a patient's Xanax prescription. (DE # 60 at 12; DE # 75 at 13-14.) Defendant argues, however, that he did not believe that there was a risk of seizure for people taking the dosage of Xanax that plaintiff was taking, and thus, did not know that plaintiff was at risk of having a seizure. (DE # 75 at 13-14.) But as plaintiff points out, defendant testified at his deposition that he had read the manufacturer's insert for Xanax and the Xanax section of Physician's Desk Reference book (DE # 72-11 at 19), both of which warn that the abrupt discontinuation of Xanax for patients taking 2 mgs

to 10 mgs daily can cause seizures (DE # 72-3 at 1; DE # 72-4 at 2). Additionally, In his affidavit, defendant stated that he knew plaintiff had been taking 1 mg of Xanax two to three times daily.[6] (DE # 61-2 at 2.) Thus, there is evidence upon which a reasonable jury could conclude that defendant knew plaintiff was at risk of having a seizure.

Defendant next argues that although his treatment decision may have been incorrect, it does not amount to deliberate indifference. (DE # 60 at 12-13; DE # 75 at 15.) Specifically, defendant asserts that he did not wean plaintiff off of Xanax of prescribe some other medicine to prevent withdrawal, because in defendant's experience, someone taking the amount of Xanax plaintiff was taking is not at risk to have any symptoms of withdrawal. (DE # 60 at 12; DE # 61-2 at 4.) Defendant argues that plaintiff's claim amounts to a disagreement with the proper course of treatment, which does not amount to deliberate indifference. (DE # 60 at 13; DE # 75 at 15); *see Zuege v. Knoch*, 423 F. App'x 621, 623 (7th Cir. 2010) ("[N]either an incorrect diagnosis nor a disagreement about the proper course of treatment alone is sufficient to show deliberate

---

[6] The parties dispute whether defendant received information indicating plaintiff was taking his Xanax prescription on an "as needed basis." (DE # 72 at 7.) Defendant contends that the jail employee that contacted him to discuss plaintiff's medications upon plaintiff's arrival at the jail told defendant that plaintiff was taking 1 mg of Xanax two to three times a day as needed.(DE # 60 at 2; DE # 61-2 at 2.) Even if defendant was informed that plaintiff was taking Xanax "as needed," however, a question of fact would still remain as to whether defendant was deliberately indifferent by not weaning plaintiff off of the Xanax or prescribing medication to prevent a seizure. *See Wallace v. Hounshel*, No. 1:06–cv–1560, 2009 WL 734714, at *7 (S.D. Ind. Mar. 19, 2009) (denying defendant medical doctor's motion for summary judgment when plaintiff provided expert testimony indicating that defendant's treatment decision was clearly incorrect and evidence that defendant failed to properly investigate plaintiff's symptoms before making treatment decision).

indifference."). Additionally, defendant argues that no reasonable jury could conclude that the treatment he provided plaintiff was so inadequate that no minimally competent professional would have responded similarly under the circumstances. (*See* DE # 75); *see also Arnett*, 658 F.3d at 751.

In response to these arguments, plaintiff argues that defendant was deliberately indifferent because defendant's decision to not wean plaintiff off the Xanax or otherwise take action to reduce the risk of seizure was "so far from accepted medical practice that a reasonable inference is that no medical judgment even took place." (DE # 72 at 17; *see also* DE # 78-1 at 1.) Plaintiff directs the court to the opinion of his expert, Dr. Susan Kimmel. (DE # 72-1.) In her opinion, Dr. Kimmel concludes that:

> [A]ny prudent practitioner that works in the correctional setting should have been aware of the risks of abruptly discontinuing Xanax in a patient who had been taking Xanax for several years. Even a minimally competent physician should know the risks of abrupt Xanax withdrawal, and would not abruptly discontinue a patient from Xanax, who had been on 1 mg twice a day for two years, without a benzodiazepine taper or other benzodiazepine withdrawal protocol.

(DE # 72-1 at 8.)

Defendant contends that despite Dr. Kimmel's opinion, this is still just a simple case of medical malpractice. Defendant, however, presents no evidence to contradict the testimony of Dr. Kimmel, other than his own testimony claiming that the treatment he provided in this case was within the standard of care. Based on the evidence presented, however, a reasonable jury could conclude that defendant's decision to not wean plaintiff off of Xanax or to prescribe some other medication to reduce the risk of seizure

9

amounted to deliberate indifference. *Cf. Hounshel,* 2009 WL 734714, at *7 (denying defendant medical doctor's motion for summary judgment when plaintiff provided expert testimony indicating that defendant's treatment decision was clearly incorrect and evidence that defendant failed to properly investigate plaintiff's symptoms before making treatment decision), *with Till v. Talens*, No. 2:11–cv–155, 2012 WL 4340795, at *5 (S.D. Ind. Sept. 20, 2012 (granting summary judgment in favor of defendant medical doctor after plaintiff received prompt treatment and failed to introduce evidence showing defendant's "treatment decisions departed substantially from accepted professional judgment, practice and standards."). Therefore, defendant has not met his initial burden on summary judgment and his motion will be denied.

## IV. Conclusion

For the foregoing reasons, defendant Dr. Hirschler's motion for summary judgment (DE # 59) is **DENIED**. Plaintiff's motion to file a sur-response (DE # 78) is **GRANTED**. Plaintiff's motion to strike (DE # 79) is **DENIED AS MOOT**.

**SO ORDERED.**

Date: October 17, 2012

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT